IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-103-JJF |
| STANLEY LUM, | : | |
| Defendant. | : | |

### RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Shawn A. Weede, Assistant United States Attorney for the District of Delaware, and hereby responds to Defendant's Motion to Suppress Physical Evidence and Statements (D.I. 12), as follows:

1. In his motion, the defendant makes three arguments: (a) the warrant that issued for the search of defendant's residence was not supported by probable cause; (b) the search of the defendant's residence exceeded the scope of the search warrant; and (c) law enforcement officers did not properly advise the defendant of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). He also requested an evidentiary hearing to "further develop the facts." (D.I. 12 at n.1).

2. The Government respectfully asserts that much of the defendant's motion may be addressed and denied without the need for an evidentiary hearing. Specifically, the first argument, by its nature – namely, a four corners argument on the affidavit to the search warrant – does not require an evidentiary hearing. Further, with respect to the third argument – that the defendant was not advised of his Miranda rights – the defendant has not specifically articulated any basis of

misconduct; rather, it appears that he merely seeks to put the Government through its paces to establish that <u>Miranda</u> warnings were provided and waived. Case law is clear that evidentiary hearings are not warranted in such situations. While an evidentiary hearing may be necessary for the remaining argument, the Government respectfully submits that it will present testimony that the evidence recovered at the defendant's residence was either in the scope of the warrant, or found in plain view in the course of the search. Accordingly, the defendant's motion should be denied.

## FACTUAL BACKGROUND

3.     On June 30, 2007, Wilmington Police Department ("WPD") Detective George Pigford applied for and received a Delaware State search warrant for 3001 N. Madison Street, Wilmington, DE 19802 from the Justice of the Peace, Court 20. A copy of the search warrant and the affidavit in support thereof are attached as Exhibit A to defendant's motion; another copy is attached as Exhibit A to this response for the Court's convenience.

4.     In the affidavit to the search warrant, Detective Pigford indicates that on June 30, 2007, at approximately 4:00 a.m., members of WPD responded to 30th and N. Madison Street in reference to a shooting that had just occurred. (Ex. A ¶ 2).

5.     After arriving on scene, officers spoke with a witness who stated that the victim and he were walking in the area of 30th and N. Madison and observed the shooter arguing with a fourth individual in the middle of the street. (Ex. A ¶ 3). After the victim and the witness walked closer to the two arguing individuals, the shooter – apparently thinking that the victim was one of the fourth individual's "boys" – pulled a gun out of his waistband and put it to the victim's neck. (Ex. A ¶ 3). The victim and the witness fled on foot, and the shooter shot at them multiple times, eventually hitting the victim in the hip. (Ex. A ¶ 3).

2

6.  At the scene, WPD recovered nine (9) spent .40 caliber Winchester bullet casings and several fragments of fired bullets. (Ex. A ¶ 5).

7.  On June 30, 2007, at approximately 5:00 p.m., Detective Pigford interviewed the shooting victim. (Ex. A ¶ 6). The victim indicated that he recognized the shooter but did not know his name, and that the shooter's mother lives at 3001 N. Madison Street. (Ex. A ¶ 6). He also stated that he had seen the shooter in front of this house in the past. (Ex. A ¶ 6). The victim was able to describe the house at 3001 N. Madison Street, including the fact that the house had a handicapped ramp up to the front door. (Ex. A ¶ 6). The victim described the shooter as a black male, approximately 5'6" to 5'8" and 140 to 150 lbs.

8.  Detective Pigford was able to determine through investigation that a woman named Renee Payne was the owner and resident of 3001 N. Madison Street, and is listed through motor vehicle records as being disabled. (Ex. A ¶ 7). Detective Pigford went to the 3001 N. Madison Street location and observed that a wheelchair ramp to the front door was in plain view, and that the address to the location was clearly marked. Through further investigation, Detective Pigford determined that Renee Payne had a son, Stanley Lum - a black male, 5'8" and 150lbs – whose home address is also listed as 3001 N. Madison Street. No other subjects were listed as having that address.

9.  Detective Pigford uncovered a photograph of Stanley Lum; however the photograph was over 4 years old. (Ex. A ¶ 8).

10. The search warrant identified the following as sought-after evidence in the shooting: (a) a .40 caliber firearm or ammunition; (b) any picture, identification, mail, papers, or

3

other materials related to the possible identity of the owner's children; and (c) the body of Stanley Lum D.O.B. 2/9/85 for current photographs and/or fingerprints.

11.     Detective Pigford and other WPD officers executed the search warrant on July 2, 2007, at approximately 6:05 a.m. Two males were found in that location – one was Julian Fisher; the second was the defendant, Stanely Lum.

12.     The defendant was located in the middle second floor bedroom, asleep when officers arrived. Officers attempted to detain the defendant, but he struggled and refused to show his hands, even after an officer attempted to pull his hands out from under him. The defendant was then tazed with one cycle, and thereafter detained.

13.     The bedroom was then searched. Inside the middle level drawer of a dresser located therein, was a plastic bag that contained 23 smaller knotted plastic bags, each of which contained a chunky white substance that later field tested positive for cocaine. Also in the drawer was a ceramic plate and razor blade containing white residue, and another plastic bag that contained empty small multicolored bags. In the same drawer were two identification cards in the name of Stanley Lum.

14.     Next to the bed in a blue shaving kit bag was a loaded Harrington and Richardson brand, model 732, .32 caliber revolver, serial number AL 49581, with a partial box of .32 caliber Smith & Wesson ammunition. Also located in the room was a black jacket hanging on the closet door. Inside the upper-left breast pocket was one clear plastic bag that contained a white chunky substance that later field-tested positive for cocaine.

15.     Lum was transported from his house to the Wilmington Hospital emergency room, where the tazer probes were removed from his back and he was given a tetanus immunization booster.

16.     Lum was then transported from the hospital to the Wilmington Police Department.  Lum was brought into an interview room, where Detective Pigford and ATF Special Agent Scott Curley were located.  Special Agent Curley read Mr. Lum his <u>Miranda</u> warnings from a yellow DEA-13A card that he took from his wallet.  Mr. Lum, after indicating that he had understood his rights, agreed to speak with Special Agent Curley and Detective Pigford.

17.     In that interview, Mr. Lum admitted to the law enforcement officers that the firearm, ammunition, and illegal narcotics found in the bedroom were his.  He also admitted to distributing cocaine, and to possessing the .32 caliber revolver for protection from individuals who may try to rob him due to his sale of illegal narcotics.

## LEGAL ARGUMENT

18.     The Government respectfully asserts that each of the defendant's arguments lack merit and that his motion should be denied.  Moreover, as explained more fully below, given the nature of the arguments presented, the Court may deny at least two aspects of defendant's motion without the need for an evidentiary hearing.

### Probable Cause and the Search Warrant

19.     The defendant's first argument is that "no probable cause existed for the issuance of the warrant" in this case.  (D.I. 12 ¶ 13).  Since this argument rises and falls on the four corners of the affidavit itself, an evidentiary hearing is not necessary in order for the Court to rule on this aspect of the defendant's motion.  E.g., <u>Martin v. Int'l Matex Tank Terminals-Bayonne</u>, 928

F.2d 614, 620 (3d Cir. 1991) ("Subject to a narrow exception not at issue here, the reviewing court may consider only evidence within the four corners of the warrant application to the magistrate.").[1]

20.    Further, before the Court addresses whether the warrant in this case is supported by probable cause, it may bypass this issue and examine whether the executing officers operated in good faith in executing the warrant according to the doctrine articulated in United States v. Leon, 468 U.S. 897 (1984). United States v. $92,422.57, 307 F.3d 137, 145 (3d Cir. 2002) (pointing out that under the Leon good faith exception to the exclusionary rule, if a motion to suppress evidence does not present novel issues of law whose resolution is necessary to guide future actions by law enforcement officers and magistrates, the district court may turn its attention directly to a consideration of the officers' good faith). The "mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." United States v. Hodge, 246 F.3d 301, 307-08 (3d Cir. 2001). Accordingly, since there is no dispute that the WPD officers in question relied upon the search warrant attached as Exhibit A to defendant's motion prior to searching the residence at 3001 N. Madison Street, this aspect of defendant's motion should be denied pursuant to the Leon doctrine.[2]

---

[1] The defendant does not assert that there are any false statements in the affidavit. Moreover, even if he had made such an allegation, he would not be entitled to a hearing on this issue without making a "substantial preliminary showing" that the affidavit contained a material false statement made knowingly or recklessly by the affiant. United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006).

[2] The defendant does not assert that any of the exceptions to the Leon doctrine are present here. United States v. Zimmerman, 277 F.3d 426, 436-37 (3d Cir. 2002) (listing the Leon exceptions).

21.     Nevertheless, if the Court determines that an examination of the search warrant affidavit is necessary, the Government submits that the issuing magistrate had a substantial basis to conclude that probable cause existed to search the defendant's residence. A search warrant is supported by probable cause if the affidavit attached thereto establishes, in light of the totality of the circumstances, that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Hodge, 246 F.3d at 305 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). In ruling on a motion to suppress evidence based on a search warrant, a district court should not engage in a *de novo* analysis when reviewing the search warrant affidavit for probable cause. Rather, "conclusions of a neutral magistrate regarding probable cause are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005); United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993 ("When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited. It is not to conduct a *de novo* review. Rather, it simply ensures that the magistrate had a substantial basis for concluding that probable cause existed.").

22.     The facts contained in the search warrant affidavit were ample to provide the issuing magistrate with a substantial basis to conclude that there was a fair probability evidence related to the shooting in question would be at 3001 N. Madison Street. Specifically, the victim, who identified himself to police, stated that his assailant's mother– later identified as Renee Payne – lived at that address, and that he saw the shooter in front of that location in the past. (Ex. A ¶ 6). The victim's description of the residence, including a wheelchair ramp, was corroborated by law enforcement. (Ex. A ¶ 6). Stanley Lum, who generally fit he description of the shooter, had a listed

residence of the location in question and was also listed as being the son of Renee Payne – the handicapped resident of 3001 N. Madison Street – with no other individuals on record at that address. Accordingly, based on the totality of the circumstances, there was a fair probability that 3001 N. Madison Street was the shooter's residence. Further, since it is reasonable to infer that individuals who possess guns keep them in their homes, there was also a fair probability that the .40 caliber firearm that was used in the shooting would also be located at that residence. E.g., Jones, 994 F.2d at 1056. Lastly, the final category of materials sought – namely, any picture, identification, mail, papers, or other materials related to the possible identity of the owner's children – are personal effects that an individual, in this case Ms. Payne, would likely keep in her home, particularly given the fact that one of her children, the defendant, is listed as a resident of the same location.

### The Scope of the Search

23.     The defendant next contends that the search and seizures at 3001 N. Madison Street exceeded the scope of the search warrant since the crack cocaine and drug paraphernalia recovered at that address were not specifically listed in the warrant itself. (D.I. 12 ¶ 14). However, even though these items may not be specifically listed on the warrant, they were nevertheless constitutionally seized under the plain view doctrine. E.g. United States v. Menon, 24 F.3d 550, 559-60 (3d Cir. 1994) (stating that "[t]he Supreme Court has allowed officers to seize incriminating evidence in plain view during the course of a lawful search because such a seizure 'does not involve an intrusion on privacy. If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view.'") (quoting Horton v. California, 496 U.S. 128, 141 (1990)). In order to seize evidence found in plain view, the officer in question (a) must not have violated the Fourth Amendment in arriving at the place from which he viewed the evidence, (b) the incriminating

character of the evidence must be "immediately apparent," and (c) the officer must have a lawful right of access to the object. Menon, 24 F.3d at 559-60.

24. In the present case, it is manifest that all the locations where contraband was found – namely, a dresser drawer and the pocket of a black jacket – were places where items specifically listed in the search warrant (for example, a .40 caliber firearm and ammunition, or identification) could have been located. Menon, 24 F.3d at 560 (holding that "a government agent has discovered evidence within the scope of the search allowed by the warrant if the agent's search fits within the literal terms of the warrant and is a reasonable means of obtaining the objects desired in the warrant."). As such, they were locations where the officers in question had a right to search, and to seize any evidence that was obviously incriminating, such as the crack cocaine and drug paraphernalia in question. United States v. Gamble, 388 F.3d 74, 77 (2d Cir. 2004) (holding that the plain view doctrine authorized law enforcement officers executing a valid warrant to seize an ammunition clip found in plain view in a dresser drawer "because they had a warrant authorizing them to search for and seize cocaine and drug paraphernalia – items that could plausibly be found in a dresser drawer").

**The Defendant's Interview Statement and the Miranda Doctrine**

25. The defendant lastly asserts that "any alleged statements made during, or subsequent to, the illegal seizure and his unlawful arrest should be suppressed" pursuant to the Miranda doctrine. (D.I. 12 ¶ 15). The defendant, however, does not specifically articulate the basis of his motion – i.e., why the officers in question did not comply with the requirements of Miranda. A defendant must present "more than mere bald-faced allegations of misconduct" in order to require an evidentiary hearing on his motion to suppress. E.g., United States v. Voight, 89 F.3d 1050, 1067

(3d Cir. 1996). Indeed, "[a] district court may deny a motion to suppress without a hearing when the defendant fails to provide a factual basis for the hearing and merely relies upon the government's 'burden or proof to establish adequate *Miranda* warnings.'" United States v. Stoddart, No. 01-2183, 2002 WL 31260988 at **4 (3d Cir. Sept. 12, 2002) (quoting United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000)). Accordingly, absent any further showing by the defendant, his motion should be denied without an evidentiary hearing.

26.   In any event, however, if the Court deems an evidentiary hearing necessary to resolve the defendant's motion, the government expects that it will meet the two-step test articulated in Moran v. Burbine, 475 U.S. 412, 421 (1986) -- specifically that the defendant's waiver of his Miranda rights was the product of "a free and deliberate choice rather than intimidation, coercion or deception," and was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421.

## CONCLUSION

**WHEREFORE,** the United States requests that the Court deny defendant's Motion to Suppress Physical Evidence and Statements.[3]

                                        Respectfully submitted,

                                        COLM F. CONNOLLY
                                        UNITED STATES ATTORNEY

                                  BY:_____/s/_____
                                        Shawn A. Weede
                                        Assistant United States Attorney

Dated: October 29, 2007

---

[3] The Government respectfully reserves the right to file a Memorandum of Law in support of its response after the completion of any evidentiary hearing in this matter.

# EXHIBIT A

City of Wilmington
State of Delaware

IN THE
JUSTICE OF THE PEACE COURT 20
CITY OF WILMINGTON
STATE OF DELAWARE

IN THE MATTER OF:
Stanley Lum 02/09/85                             ) DAYTIME
3001 N. Madison St.                              ) SEARCH
Wilmington, DE 19802                             ) WARRANT AND
AND ANY AND ALL CURTILAGES                       ) RETURN

NEW CASTLE COUNTY)
                 )    SS
STATE OF DELAWARE)

BE IT REMEMBERED, on this 30th DAY OF Jun 2007.

Before me, the Honorable Judge ▓▓▓. LOPEZ _____ personally appeared Det. George Pigford who being by me duly sworn do depose and say: That there is reason to believe and that they do believe that located in or near:

3001 N. Madison St. Wilmington, DE 19802

Which is owned or occupied by: Renee Payne D.O.B. 09/08/50 and/or Stanley Lum D.O.B. 02/09/85.
That there has been and/or is now and/or will be located and/or concealed property, articles, Papers, or things, in or at on said person(s), place(s), and/or thing(s), or on the occupant(s) Thereof namely:
1. A .40 caliber firearm or ammunition.
2. Any picture, identification, mail, papers, or other materials related to the possible identity of the owner's children.
3. The body of Stanley Lum D.O.B. 02/09/85 for current photographs and/or fingerprints.

Which said property, articles, and/or things were, are or will be possessed and/or used, and/or represent evidence of a violation of Delaware Criminal Code, Title 11, Section 0613, Assault 1st.
And, the facts tending to establish probable cause for believing that foregoing grounds for the application exists as follows:

00000009

SEE ATTACHED TEXT

1.      Your affiant can truly state that he is employed as a police officer by the City of Wilmington, and was acting in his official capacity on the date of this incident. Your affiant is currently assigned to the Criminal Investigations Division. This incident did occur in the City of Wilmington, County of New Castle, State of Delaware.

2.      On 06/30/07 at approximately 0405 hrs. Wilmington Police responded to the area of 30th and N. Madison St.'s in reference to a shooting that had just occurred. When the police arrived they located an adult male witness and adult male victim who had been shot in the hip. Emergency Medical Services arrived and began to attend to the injured person while the witness gave the following description of events.

3.      The witness stated that he and the victim, ▇▇▇▇▇▇, were walking in the area of 30th and N. Madison St.'s and observed two subjects arguing in the street. One of the subjects (later identified as the suspect) stated to the other subject, "Stop hanging in front of my moms house." ▇▇▇▇ recognized one of the subjects and said hello to same. The other subject, (unknown suspect) then turned his attention to ▇▇▇▇ and made a statement to the effect of, "Oh now that your boys are here you're gonna do something." ▇▇▇▇ responded that he had not problem with this suspect and then the suspect then removed a handgun from his waist band, moved closer to ▇▇▇▇, and put the gun against ▇▇▇▇ neck. ▇▇▇▇ said that he was not afraid of the gun and he then pushed the suspect to the ground. ▇▇▇▇ and the adult male witness then began to run south on Madison St. The suspect then shot approximately 9 rounds in the direction of the fleeing victim and witness. One of those rounds struck the ▇▇▇▇ in the hip causing a broken pelvis and internal bleeding. ▇▇▇▇ and the witness then were still running when ▇▇▇▇ realized that he had been hit. ▇▇▇▇ fell to the ground and told the witness to continue on and to call the police.

4.      This investigator arrived at the scene and spoke to the witness who gave the same description of events. ▇▇▇▇ was transported to the Christiana Emergency Room and was unable to be interviewed until a later time.

5.      Located at the scene were 9 spent .40 cal Winchester bullet casings and several fragments of fired bullets.

6.      On 06/30/07 at approximately 1700 hrs., this investigator was able to interview ▇▇▇▇. ▇▇▇▇ gave the same description of events and stated that recognized the suspect who had shot him but he does not know his name. ▇▇▇▇ stated that he knows that the suspect's mother lives at 3001 N. Madison St., and he has seen the suspect in front of the house in the past. ▇▇▇▇ described the house both by address and description stating that the house had a handicapped ramp up to the front door. ▇▇▇▇ described the suspect as a black male, approximately 5'6" to 5'8" and 140-150 lbs., with a small mustache and longer hair. Goode stated that he would be able to identify the suspect if he saw him again.

7.      Based on the information received from the victim, writer performed a public records check and identified the owner of 3001 N. Madison St. Wilmington DE as Renee Payne 09/08/50 with a registered phone number of 302-762-7917. Writer also perfomed a DELJIS check of motor vehicle records and learned that Payne has a registered address of 3001 N. Madison St. Renee Payne is listed as being disabled. Writer then performed a reverse phone number search and learned that this number is also registered to Stanely Lum BMN 02/09/85 Stanley Lum is listed as 5'8" tall and 150 Lbs. and has a home address of 3001 N. Madison St. Writer then checked DELJIS records for Stanley Lum and learned that his mothers name is Renee Payne. No other subjects were located that reside at 3001 N. Madison St.

8.      Writer checked police records and could only find an outdated picture of Lum that is 4 years old.

9.    This investigator then checked the residence located at 3001 N. Madison St. and observed that the house does have a wheel chair ramp to the front door and is clearly marked as 3001 N. Madison St.

WHEREFORE, your affiant prays that a search warrant be issued authorizing the search of;

        **3001 N Madison St. Wilmington DE 19802**

In a manner prescribed by law in the Daytime hours.

SWORN TO, or subscribed this 30th Jun 2007

Affiant
Det. ▮▮▮▮ Pigford
Wilmington Department of Police

Justice of the Peace Court
City of Wilmington
State of Delaware

IN THE
JUSTICE OF THE PEACE COURT 20
CITY OF WILMINGTON
STATE OF DELAWARE

IN THE MATTER OF:

Stanley Lum D.O.B. 02/09/85                ) DAYTIME
3001 N. Madison St.                        ) SEARCH
Wilmington, DE 19802                       ) WARRANT AND
AND ANY AND ALL CURTILAGES                 ) RETURN

THE STATE OF DELAWARE TO: Det. George Pigford, with the assistance of any police officer or constable or any other necessary or proper person(s) assistance.

GREETINGS; Upon the annexed affidavit and application or complaint for a search Warrant, as I am satisfied that there is probable cause to believe that in or at;

3001 N. Madison Street WILMINGTON, DE 19802

Certain property namely;
1. A .40 caliber firearm or ammunition.
2. Any picture, identification, mail, papers, or other materials related to the possible identity of the owner's children.
3. The body of Stanley Lum D.O.B. 02/09/85 for current photographs and/or fingerprints.

Which said property, articles, papers, or things were, are, or will be used and/or possessed and/or represents evidence of a violation of the Delaware Criminal Code, Title 11, Section 0613, Assault 1st.

NOW, THEREFORE, YOU ARE HEREBY COMMANDED, within ten days of the Date hereof to search the above named person(s), place, or thing for the property specified in the annexed affidavit and application, which is hereby incorporated herein by reference, and serving this warrant in the daytime, if the property, papers, articles or things of any part thereof, be found here, to seize it, prepare a written inventory of the property seized, and to return the property and his warrant to me forthwith, with the written inventory and the person(s) in whose custody or possession the property was found, to be dealt with according to the law.

DATED THIS 30th DAY OF JUN

_____
Justice of the Peace Court 20

00000010