IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-103-JJF |
| STANLEY LUM, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Stanley Lum, by and through his undersigned counsel, Edson A. Bostic, Federal Public Defender for the District of Delaware, respectfully submits this Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements.[1] For the reasons set forth below, Mr. Lum seeks to exclude the Government's admission, at trial, of any and all evidence obtained as the result of his illegal seizure and arrest on or about July 2, 2007, and all statements made during, or subsequent to, the illegal seizure and arrest.

**I. INTRODUCTION**

On July 24, 2007, the Grand Jury for the District of Delaware returned a three-count Indictment with Notice of Forfeiture against Mr. Lum, charging him with: (1) knowingly possessing with the intent to distribute more than five grams of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) knowingly carrying

---

[1] On May 2, 2008, Mr. Lum filed a *pro se* Motion For New Counsel. Defense Counsel will file a response to Mr. Lum's motion by May 5, 2008. In the event that the Court grants Mr. Lum's motion, Defense Counsel respectfully requests leave for new appointed counsel to supplement this Memorandum.

a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) knowingly possessing a firearm in and affecting interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On September 7, 2007, Mr. Lum filed a Motion to Suppress Physical Evidence and Statements, arguing that: no probable cause existed for the issuance of a search warrant, the police officers' search and seizure exceeded the scope of the warrant, and Mr. Lum's alleged statements were taken in violation of his Fifth Amendment rights. The Government filed its response on October 29, 2007.

On January 22, 2008, Mr. Lum filed a Supplemental Motion to Suppress Physical Evidence and Statements, and requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). The Government filed its response on January 30, 2008.

On April 18, 2008, this Court conducted a Franks hearing. At the conclusion of that hearing, Mr. Lum withdrew his motion on the issue of whether his statements were taken in violation of his Fifth Amendment rights. (Tr. 42-43).

## II. PROPOSED FINDINGS OF FACT

On June 30, 2007, Wilmington police officers responded to a shooting in the area of 30th and North Madison Streets in Wilmington, Delaware. Upon arrival, the officers found a male victim that had been shot in the hip, and a male witness to the incident. Detective George Pigford investigated the shooting incident and interviewed the shooting victim and witness.

During an apparent confrontation with two unknown individuals, the male witness stated, "stop hanging in front of my aunt's house," and the victim stated, "stop hanging in front of my mom's house." (Tr. 15). In response, one of the unknown individuals stated, "oh now that your boys are here you're gonna do something," and the shooter pulled a gun from his waistband and put it against

the victim's neck. The male witness and victim attempted to flee the scene, and the shooter shot at them multiple times, hitting the victim in the hip. Investigating officers recovered nine bullet casings and several bullet fragments at the scene.

The male witness informed Detective Pigford that the shooter was a light-skinned black male, weighed 120 pounds and was approximately 20 years old. (Tr. 16-17). The victim informed Detective Pigford that the shooter was a black male, approximately 25 years old, was between 5"6 to 5"8, weighed 140 to 150 pounds and had a small mustache and longer hair. (Tr. 18-19). The victim stated that he recognized the suspect but did not know his name, and that the suspect's mother lived at 3001 N. Madison Street in Wilmington, Delaware. The victim further stated that he had previously seen the suspect in front of that house, and that the house had a handicapped ramp leading up to the front door.

After performing a public records check, Detective Pigford discovered that Renee Payne, who is disabled, was the owner of the residence at 3001 North Madison Street. Detective Pigford also discovered that the residence's telephone number was registered to Ms. Payne and to Mr. Lum, her son. According to records, Mr. Lum was 5"8 and weighed 150 pounds, and his home address was listed as 3001 North Madison Street. Detective Pigford found that there were no other residents at the address, and he personally observed that the home had a wheel chair ramp and was marked as 3001 North Madison Street.

Detective Pigford authored the search warrant and supporting Affidavit. The search warrant identified the following: (1) a .40 caliber firearm or ammunition; (2) any picture, identification, mail, papers, or other materials related to the possible identity of the owner's children; and (3) "the body of Stanley Lum, DOB 02/09/85, for current photographs and/or fingerprints."

The Affidavit, which recounted the confrontation, witness and victim statements and Detective Pigford's investigation, confused some of the statements made by the individuals and failed to mention the shooter's complexion. (Tr. 16-17). Detective Pigford also testified during the Franks hearing that he did not include information about the suspect fleeing the scene in a Ford Crown Victoria because he was not aware of this information at the time he prepared the affidavit. (Tr. 21-22).

On July 2, 2007, officers executed the search warrant and found Julian Fisher in a second-floor front bedroom. The officers secured Mr. Fisher without incident, and alleged that they saw a clear, plastic ziplock bag containing numerous small, purple ziplock bags and Mr. Fisher's State of Delaware Department of Correction identification in plain view.

Officers further alleged that they found a clear, plastic bag containing several large pieces of an off-white chunky substance, which later field tested positive for cocaine. The officers recovered clear plastic bags from under a couch and a "Myweigh" digital scale that was sitting on top of the dresser. Finally, the officers also found sandwich bags, latex gloves, a ceramic plate with a razor blade and a large piece of an off-white chunky substance in the dresser's drawer.

Officers found Mr. Lum sleeping in the middle second-floor bedroom, and claimed that he was tasered and taken into custody following a struggle. The officers alleged that they recovered a small ziplock bag containing a green, plant material from the bed in which Mr. Lum had been sleeping, a clear, plastic baggie with 23 baggie corners containing an off-white chunky substance, a ceramic plate with suspected cocaine residue, razor blades, green and white plastic baggies and two identification cards from a dresser in the bedroom.

Officers also alleged that they recovered a loaded Harrington and Richardson model 732 six

4

shot revolver, a .32 caliber Smith & Wesson revolver, box of rounds from a shaving kit near the dresser, and a plastic baggie with an off-white chunky substance from a coat that was hanging on a closet door in the bedroom. The drugs field tested positive for marijuana and cocaine. The officers alleged that in a taped, post-Miranda statement, Mr. Lum admitted to being a convicted felon, possessing the firearms, ammunition and illegal narcotics, and to selling drugs.

### III. PROPOSED CONCLUSIONS OF LAW

#### A. The Search Warrant Affidavit & Probable Cause

The Fourth Amendment's Warrant Clause provides, in pertinent part, that no warrant shall issue without probable cause, supported by Oath or affirmation. See U.S. Const. amend. IV. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that criminal defendants have the right to challenge the truthfulness of factual statements contained in an affidavit supporting a search warrant, after the warrant has been issued and executed.

In Franks, the Court explained:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-56. Thus, a defendant must prove by a preponderance of the evidence: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions

5

were material, or necessary, to the probable cause determination. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (citing Franks, 438 U.S. at 171-72).

There is a presumption of validity regarding the affidavit supporting the search warrant, and the defendant's challenge and preliminary showing must be "supported by more than a mere desire to cross-examine. There must be allegations of a deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. at 171. The defendant's offer of proof must specifically reference the portion of affidavit that is alleged to be false, and must be accompanied by a statement of reasons, such as affidavits or reliable witness statements. Id.

In Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000), the Third Circuit identified the following standard regarding the affiant's misstatements or omissions:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

Id. at 783,787 (quoting United States v. Davis, 617 F.2d 677, 694 (D.C. Cir. 1979)).

If the court is faced with a tainted warrant, the next step is to "excise the tainted evidence and determine whether the remaining, untainted evidence in an affidavit would provide a neutral magistrate with probable cause to issue a warrant." United States v. Herrod, 962 F.2d 1131 (3d Cir. 1992) (quoting United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987)). See also, United States v. Johnson, 690 F.2d 60, 63 (3d Cir. 1982) cert. denied, 459 U.S. 1214 (1983) (holding that "even assuming that some factual averments in the affidavit are tainted, they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit"). Cf., Russo, 212 F.3d at 789 (requiring the court to excise "the offending inaccuracies and insert the facts recklessly omitted,

6

and then determine whether or not the "corrected" warrant affidavit would establish probable cause," when dealing with an omission).

Although Mr. Lum submits that the warrant affidavit contains misstatements and omissions, he recognizes that these misstatements and omissions do not rise to the level of knowing, deliberate or reckless disregard for the truth. Mr. Lum submits, however, that no probable cause existed for the issuance of the warrant.

In Illinois v. Gates, 462 U.S. 213, 236 ( 1983), the Supreme Court stated that a reviewing court must determine whether the magistrate judge had a "substantial basis" for concluding that probable cause existed to uphold a warrant. Id. at 238. See also, United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993). "The task of the issuing magistrate is to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The statements in an affidavit may not be read in isolation, and must be read as a whole. "Furthermore, '[t]he issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (citations omitted).

Mr. Lum submits that there was no substantial basis for the conclusion that probable cause existed to support the issuance of a search warrant in this matter. The information contained in the warrant affidavit failed to establish a fair probability that evidence of a crime would be found in the residence. United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002). Accordingly, the

evidence in this matter must be suppressed in accordance with the "fruit of the poisonous tree doctrine" expressed in Wong Sun v. United States, 371 U.S. 471 (1963).

### B. The Scope of the Residential Search

One's home is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed.'" Zimmerman, 277 F.3d at 426 (quoting Payton v. New York, 445 U.S. 573, 585 (1980)). In Zimmerman, the Third Circuit stated that the Fourth Amendment prohibits a general warrant, and that the "warrant must also describe things to be seized with sufficient particularity and be 'no broader than the probable cause on which it is based.'" Id. at 432 (quoting United States v. Weber, 923 F2d 1338 (9th Cir. 1991). See also, Steele v. United States, 267 U.S. 498 (1925) (stating that a search warrant should leave "nothing . . . to the discretion of the officer executing the warrant."). Thus, the Fourth Amendment requires that probable cause must exist for each item listed in a search warrant, and each item must be particularly described. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars, 307 F.3d 137, 148 (3d Cir. 2002).

As previously argued in Mr. Lum's suppression motion, the search and seizure exceeded the scope of the search warrant. Upon the discovery of suspected drug paraphernalia, the officers should have obtained an additional search warrant to expand their search for suspected drugs, and a reasonable officer would have known that the search of the room and seizure of evidence went beyond the permissible scope of the search warrant. Because the officers' seizure of this evidence violated the Fourth Amendment, all such evidence must be suppressed in accordance pursuant to Wong Sun.

### IV. **CONCLUSION**

For the foregoing reasons, Mr. Lum requests that this Court suppress all physical evidence in this matter.

Respectfully submitted,

/s/ Edson A. Bostic
Edson A. Bostic
Federal Public Defender
Federal Public Defender's Office
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010
ecf_de@msn.com
Attorney for Stanley Lum

Dated: May 2, 2008