IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 07-103-JJF |
| STANLEY DELANO LUM, | : |
| Defendant. | : |

Colm F. Connolly, Esquire, United States Attorney, and Shawn A. Weede, Esquire, Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Edson A. Bostic, Esquire, Federal Public Defender, of the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorney for Defendant.

**MEMORANDUM OPINION**

May 19, 2008
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant's Motion To Suppress Physical Evidence And Statements (D.I. 12) and Defendant's Supplemental Motion To Suppress Physical Evidence And Statements (D.I. 24). For the reasons discussed the Court will deny the Motion.

I. **BACKGROUND**

On July 24, 2007, Defendant, Stanley Lum, was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On September 7, 2007, Mr. Lum filed a Motion To Suppress Physical Evidence And Statements (D.I. 12) contending that (1) the search of his mother's residence pursuant to a search warrant was illegal, because the warrant lacked probable cause, and (2) Mr. Lum's statements were taken in violation of Miranda v. Washington, 384 U.S. 444 (1966).

On December 17, 2007, the parties appeared before the Court for the suppression hearing in connection with the Motion To Suppress. At the outset of the hearing, the Government argued that the Court should limit its inquiry to whether the search warrant was supported by probable cause. Mr. Lum argued that he should be permitted to cross-examine the affiant of the search warrant, Wilmington Police Detective George Pigford, on the contents of his affidavit pursuant to Franks v. Delaware, 483 U.S. 154 (1978). The Court adjourned the hearing and granted Mr.

1

Lum leave to file a Supplemental Motion to articulate the basis of his Franks argument.

A Supplemental Motion To Suppress Physical Evidence And Statements (D.I. 24) was filed by Mr. Lum on January 22, 2008. The Government filed a Response (D.I. 25) on January 30, 2008. The Court held a combined Franks and Evidentiary Hearing on the Motion and Supplemental Motion on April 18, 2008. The parties have filed simultaneous post-hearing briefs.

At the hearing, Mr. Lum abandoned his Miranda violation argument. However, Mr. Lum presses his argument that (1) no probable cause existed for the issuance of the warrant, and (2) the search and seizure exceeded the scope of the search warrant.[1]

## II. FINDINGS OF FACT

1. On June 30, 2007, at a little after 4:00 a.m., Wilmington police officers responded to a shooting in the area of 30th and North Madison Streets in the City of Wilmington, Delaware. Upon arrival, the police discovered that a male had been shot in the hip. There was one male witness. (Tr. 11-13.)

2. Detective George Pigford of the Criminal Investigation Division of the Wilmington Police Department investigated the shooting incident. (Id.) Detective Pigford interviewed the male witness first. At approximately 5:00 p.m. that evening,

---

[1] It also appears from the post-hearing briefing that Mr. Lum may have abandoned his argument under Franks; however, the Court will nevertheless address the argument.

2

Detective Pigford interviewed the shooting victim at the hospital. (Tr. 27-28.)

3. A few hours later, Detective Pigford authored a search warrant and an affidavit in support of the warrant. (Tr. 11-12.) The search warrant identified the following information: (1) a .40 caliber firearm or ammunition, (2) any picture, identification, mail, papers or other materials related to the possible identity of the owner's children, and (3) the body of Stanley Lum for current photographs and/or fingerprints. (Def. Exh. 1.)

4. Before authoring the search warrant and affidavit, Detective Pigford did not review his notes, because his conversation with the victim was fresh in his mind. (Tr. 15-16.)

5. In the affidavit attached to the search warrant, Detective Pigford wrote that the witness was walking with the victim at the time of the shooting and observed two unidentified individuals arguing in the street. One of these individuals, later identified as the suspect, stated, "Stop hanging in front of my mom's house." The victim recognized one of the individuals and said hello to him. The other subject then stated, "[O]h now that your boys are here you're gonna do something." Then, the shooter removed a gun from his waistband and put it against the victim's neck. The witness and the victim attempted to flee the scene. The shooter fired approximately nine rounds in the

3

direction of the victim and the witness. One of the rounds struck the victim in the hip causing a broken pelvis and internal bleeding. Officers discovered nine bullet casing and several bullet fragments at the scene. (Def. Exh. 1.)

    6.    Detective Pigford also provided a description of the shooter, as relayed to him by the victim. Specifically, the victim described the shooter as a black male, approximately 5'6" to 5'8" and weighing 140 to 150 pounds with a small mustache and longer hair. The victim stated that he recognized the suspect and would be able to identify him if he saw him again, but he did not know his name. The victim also knew that the suspect's mother lived at 3001 N. Madison Street, Wilmington, Delaware, and he described the residence as having a handicapped ramp leading to the front door. The victim reported seeing the suspect in front of that address in the past. (Id.)

    7.    Detective Pigford further wrote that he performed a public records check and identified the owner of the residence as Renee Payne. A motor vehicle check indicated that Renee Payne is disabled. Detective Pigford also indicated that he discovered the residence's phone number and learned that the number was registered to Ms. Payne and her son, Mr. Lum. (Id.)

    8.    Based on records reviewed by Detective Pigford, he learned that Mr. Lum is 5'8" and 150 pounds. His home address is listed as 3001 N. Madison Street. (Id.)

9. The search warrant was executed on July 2, 2007[6]. According to the Government, officers found Julian Fisher in the second-floor front bedroom. Mr. Fisher was secured without incident. Officers then observed in plain view a clear plastic ziplock bag containing numerous small purple ziplock bags and a State of Delaware Department of Correction identification in plain view.

10. The officers then found a clear, plastic bag containing several large pieces of an off-white chunky substance which later field tested positive for cocaine. Officers recovered clear plastic bags from under a couch and a "Myweigh" digital scale on top of the dresser. Officers found sandwich bags, latex gloves, a ceramic plate with a razor blade and a large piece of an off-white chunky substance in the dresser drawer.

11. The officers found Mr. Lum sleeping in the middle second-floor bedroom. Mr. Lum struggled with the officers and was tasered and taken into custody. The officers then recovered a small ziplock bag containing a green plant material from the bed where Mr. Lum was sleeping. They also recovered a clear plastic baggie with 23 baggie corners containing an off-white chunky substance, a ceramic plate with cocaine residue, razor blades, green and white plastic baggies and two identification cards from a dresser in the bedroom.

12. The officers also recovered a loaded Harrington and

Richardson model 732 six shot revolver, a .32 caliber Smith and Wesson revolver, box of rounds from a shaving kit near the dresser, and a plastic baggie with an off-white chunky substance from a coat hanging on a closet door in the bedroom. The substances recovered field tested positive for marijuana and cocaine.

13. At the hearing, Detective Pigford was questioned about discrepancies among the search warrant affidavit, his report, his notes concerning the victim and witness interviews and the report of Patrolman Cavanaugh, who was the responding patrol officer at the scene. Detective Pigford explained that the witness told him that the suspect said, "Stop hanging in front of my aunt's house," but the victim described the statement as, "Stop hanging in front of my mom's house." Detective Pigford testified that when he authored the search warrant, he inadvertently made them the same statement, because the victim's statement was more fresh in his mind than the witness's statement. (Tr. 15, 32.)

14. Detective Pigford also testified at the hearing that the witness told him that the shooter was a light skinned, black male, about twenty years old, 5'7" tall and 120 pounds. Detective Pigford testified that he did not include this information in the warrant affidavit, because he used the description provided by the victim. (Tr. 16-17, 34-35.)

15. Detective Pigford was asked about cross-outs on his

6

notes from the interview of the victim. Detective Pigford indicated that he misunderstood the victim initially and that he crossed out what was said and asked the victim again. Detective Pigford then noted the responses. (Tr. 19.)

16. Detective Pigford also testified that he received information concerning the vehicle from the victim. Specifically, the victim indicated that the suspect left the scene in a new black car, possibly a Saab. Detective Pigford testified that he did not put this information in the affidavit because that information was not relevant to establishing probable cause for the warrant, which was for the search of a residence, not a vehicle. (Tr. 20, 22.)

17. Detective Pigford also testified that Patrolman Cavanaugh included different information in his report. Specifically, Patrolman Cavanaugh indicated that the suspect was a light skinned black male, 5'7" to 5'9". Patrolman Cavanaugh also noted that the suspect fled the scene in a gray Ford Crown Victoria. (Tr. 21-22.)

18. Detective Pigford testified that he was not aware of the information in Patrolman Cavanaugh's report when he prepared the warrant affidavit and only became aware of it after he wrote a follow-up report. Although Detective Pigford spoke to Patrolman Cavanaugh at the scene, Patrolman Cavanaugh did not mention the Crown Victoria at that time. (Tr. 22.)

19. Detective Pigford also learned during his phone number search that Mr. Lum had last used the telephone number registered to him in 2003, but he did not include this information in the warrant affidavit. (Tr. 26.)

### III. CONCLUSIONS OF LAW

A. <u>Whether Mr. Lum Has Established A Franks Violation</u>

20. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . ." U.S. Const, amend IV.

21. In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court concluded that a defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause filed in support of a warrant. In order to obtain a <u>Franks</u> hearing, a defendant must make a "substantial preliminary showing" that the affidavit contained a false statement that was made knowingly or with reckless disregard for the truth, which is material to a finding of probable cause.

22. The Court allowed the submission of supplemental papers and based on those submissions determined that a <u>Franks</u> hearing was appropriate in this case.

23. To establish a <u>Franks</u> violation the defendant bears the burden of proving that "(1) the affiant knowingly, and deliberately, or with reckless disregard for the truth made false statements or omissions that create[d] a falsehood in applying

8

for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006).

24. The misstatement in the affidavit identified by Mr. Lum concerns whether the suspected shooter referred to his mom's house or his aunt's house when he warned another individual to stop hanging around in front of the house. The witness believed the man made a reference to his aunt's house, but the victim believed he referred to his mom's house. Detective Pigford spoke to the victim just before he prepared the search warrant affidavit and his version of events was fresh in his mind at that time. As a result, Detective Pigford mistakenly conflated the witness's and victim's statements and thought that both confirmed that the residence referred to was the residence of the shooter's mother. There is no evidence that this mistake was made knowingly, deliberately or with reckless disregard for the truth. Innocent or negligent mistakes such as the one identified here are insufficient to establish a Franks violation.

25. At the hearing, Mr. Lum also identified several alleged omissions from the search warrant affidavit including: (1) the description of the shooter provided by the witness, (2) that the shooter fled the scene in a vehicle, and (3) that Mr. Lum last used the phone number associated with the residence in 2003. However, Mr. Lum has not established that any of these omissions

were made deliberately or with reckless disregard for the truth.

26. With respect to the description of the shooter provided by the witness, Detective Pigford noted that the witness could not identify the shooter. As a result, Detective Pigford testified at the evidentiary hearing that he did not intend to use the witness to identify the suspect. Rather, Detective Pigford relied on the victim's description of the shooter, because the victim indicated that he could identify the shooter. The Court credits Detective Pigford's testimony. Detective Pigford's explanation is reasonable, and does not evidence any deliberate or reckless disregard for the truth. Moreover, the Court notes that the differences between the victim's and witness's description of the suspect are minimal, and given the witness's inability to identify the shooter, a reasonable person would not find the witness's description to be material.

27. With respect to the suspect's flight in a vehicle, the Court credits Detective Pigford's testimony that he was not aware of this information at the time he authored the search warrant affidavit. Accordingly, Detective Pigford could not have deliberately or recklessly omitted information that was not within his range of knowledge. <u>Wilson</u>, 212 F.3d 781, 788 (3d Cir. 2000) (holding that a fact is recklessly omitted from an affidavit under <u>Franks</u> if an "officer withholds a fact <u>in his ken</u>" that any reasonable person would wish to know) (emphasis

10

added).

28. With respect to Mr. Lum's use of the phone number revealed by Detective Pigford's public record search, the Court concludes that the phone number was not material to the probable cause securing the warrant. The material fact yielded from Detective Pigford's search was that Mr. Lum and his mother were the only two individuals listed as residing at 3001 N. Madison Street, the home identified by the victim as the residence of the shooter's mother. Accordingly, the Court concludes that Mr. Lum has failed to establish a Franks violation.

B. Whether Mr. Lum Has Established That The Search Warrant Was Unsupported By Probable Cause

29. After a search warrant has been issued and is challenged on the basis of probable cause, the Court must determine whether the issuing judicial officer had a substantial basis for finding probable cause. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). The determination of probable cause by the issuing judicial officer is afforded great deference. United States v. Ninety-Two Thousand Four Hundred Twenty-Five Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002).

30. In reviewing the affidavit in support of the search warrant, the Court should take a common sense approach and avoid interpreting the affidavit in a "hyper-technical." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). In so doing, the Court should confine itself to the facts before the issuing

judicial officer and not consider information from other portions of the record. Hodge, 246 F.3d at 305. If the evidence presents a "close call," the Court should resolve the matter in favor of upholding the warrant. Jones, 994 F.2d at 1055.

    31. The affidavit in support of the search warrant identified the residence in front of which the shooting occurred as the residence of Mr. Lum's mother. The victim described the shooter and that description coincided with information concerning Mr. Lum's description. The victim also indicated that he had seen the shooter in front of the residence in the past. Detective Pigford, through his investigation, discovered that Mr. Lum was listed as living at the residence. With these facts in mind, the Court concludes that it was reasonable to infer that Mr. Lum was the shooter and that his residence was 3001 N. Madison Street. It was also reasonable for the judicial officer to infer that an individual would keep his personal belongings at his residence, and therefore, the Court concludes that the issuing judicial officer was presented with facts establishing a fair probability that the sought after evidence, including Mr. Lum, his identification, the firearm, and any pictures, identification mail or papers related to the identity of the owner's children, would be located at Mr. Lum's residence. Jones, 994 F.2d at 1056 (recognizing that evidence like firearms, cash and clothing are the types of evidence that would be located

in a suspect's residence).[2]  Accordingly, the Court concludes that the search warrant was supported by probable cause as outlined in the accompanying affidavit.

        C.    <u>Whether Mr. Lum Has Established That The Scope Of The Search Exceeded The Contours Of The Warrant</u>

      32.  A valid search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.

      33.  "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more."  <u>Horton v. California</u>, 496 U.S. 128, 140 (1990).

      34.  However, if law enforcement officers are engaged in an otherwise lawful search and inadvertently discover in plain view contraband or other items, the incriminating character of which is immediately apparent, those items may be seized even if those items fall beyond the original scope of the warrant.  <u>Id.</u> at 135.

      35.  In this case, Mr. Lum does not challenge the facts as set forth by the Government concerning the areas searched and the location of the items seized, including their discovery in plain view.  The searched areas were all areas where items specifically

---

[2]  In the alternative, the Court concludes that under <u>Franks</u>, if the alleged misstatements and omissions were corrected, they would not undercut the probable cause provided in the affidavit by virtue of the victim's statements.  In other words the alleged misstatements and omissions were not material to a finding of probable cause.

13

listed in the warrant could have been located. <u>United States v. Menon</u>, 24 F.3d 550, 560 (3d Cir. 1994) (holding that "a government agent has discovered evidence within the scope of the search allowed by the warrant if the agent's search fits within the literal terms of the warrant and is a reasonable means of obtaining the objects described in the warrant"). For example, a firearm, ammunition or identification could have been located in dresser drawers or the pocket of jackets in the house. Thus, the Court concludes that law enforcement officers had the right to search and seize any incriminating evidence located in those areas, such as crack cocaine and drug paraphernalia, even though those items were not specifically listed in the warrant. <u>See e.g.</u>, <u>United States v. Gamble</u>, 388 F.3d 74, 77 (2d Cir. 2004) (holding that plain view doctrine permitted seizure of ammunition clip found in plain view inside a dresser drawer, because law enforcement officers had "a warrant authorizing them to search for and seize cocaine and drug paraphernalia - items that could plausibly be found in a dresser drawer"); <u>United States v. Erickson</u>, 794 F. Supp. 273, 276 (N.D. Ill. 1992) ("[I]n searching defendant's home for easily concealed items, it was proper for the officers to search any area of the home in which the specified property could have been located and to seize any property constituting evidence of criminal activity."). Accordingly, the Court concludes that law enforcement officers

14

were not required to obtain an additional search warrant once drugs and drug paraphernalia were discovered in plain view, and law enforcement officers did not exceed the scope of the warrant when conducting the search.

### IV. CONCLUSION

For the reasons discussed, the Court will deny Mr. Lum's Motion To Suppress Physical Evidence And Statements and his Supplemental Motion To Suppress Physical Evidence And Statements.

An appropriate Order will be entered.